IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[40] ANGEL ROSA-CAMACHO,<br><br>Defendant. | CRIM. NO.: 07-453(JAF/SCC) |

**MEMORANDUM AND ORDER**

On October 2, 2014, Probation filed a motion informing the Court that Defendant Angel Rosa-Camacho had allegedly been involved in a domestic violence incident and had thereby violated the terms of his supervised release. Docket No. 2616. In order to afford Rosa an opportunity to present certain evidence, the preliminary revocation hearing was held in several parts. *See* Docket Nos. 2627, 2642, 2649, 2654, 2657.

At a hearing on November 4, 2011, United States Probation Officer Martin de Santiago testified that on September 25, 2014,

he made an unscheduled visit to Rosa's residence, where he found Rosa with scratches to his face and neck. Rosa stated to USPO de Santiago that he had gotten into an altercation with his domestic partner. On cross-examination, USPO de Santiago testified that Rosa told him that Rosa's partner had been the aggressor and that Rosa only defended himself. At the same hearing, Police of Puerto Rico Agent Wilfredo Santiago-Nieves, an eight-year veteran of Bayamón's domestic violence division, also testified. According to Agent Santiago-Nieves, he was called to Rosa's home on September 24, 2014, because of an aggression event. According to Agent Santiago-Nieves, another POPR Agent, Nancy Rivera-Rodríguez, had investigated. Agent Santiago-Nieves testified that the alleged victim, Rosa's partner, reported that she had been attacked by Rosa. Rosa's partner was taken to the hospital, where an examination showed that she had lacerations and other injuries consistent with her story.

Rosa's partner did not testify at any of the hearings held on this matter, a fact that was explained by a sworn statement signed by her[1] and produced by Rosa. According to that

---

1. The statement was prepared by Rosa's counsel but signed by Rosa's partner.

statement, she had moved to Orlando and, on doctor's orders, could not return because of a high-risk pregnancy. The sworn statement went on to claim that she had been at a night club on September 23, 2014, where she was involved in a fight and injured. According to Rosa, this was the source of his partner's injuries, and the story told to the police was a lie meant to hurt him after a fight.

At the final hearing, held on December 2, 2014, Rosa proffered a CD containing all of the recordings of calls between himself and his partner during his incarceration at MDC.[2] According to Rosa, these recordings bear out his claim that Rosa's partner was lying in her report to the police, a fact that Rosa argued is shown by her apologies in the recorded calls. During the hearing, a small and ultimately unhelpful sampling of these calls was played, but I have subsequently listened to the entire CD, and I find it to be much more ambiguous than Rosa claimed at the hearing. In the first calls, beginning around October 16, 2014, the calls pertain to whether or not Rosa's partner will attend a hearing in state court; Rosa wished that

---

2. Rosa has been held at MDC since his arrest on October 6, 2014. The calls proffered by Rosa were recorded between October 16 and November 4, 2014.

UNITED STATES v. ROSA-CAMACHO                                        Page 4

she would not, so that the charges would be dismissed (and, he hoped, these proceedings would be short-circuited). In those calls, Rosa seems to pressure his partner not to appear; in any case, she was in Orlando at the time and was unlikely to attend, as she ultimately did not. Throughout their conversations, Rosa's partner says things like "my bad," but it is never clear whether she is apologizing for *lying about* the violence or for *reporting* the violence. In call number 12, for instance, she says: "if you didn't argue with me, this wouldn't have happened." At all times, Rosa maintains his innocence and asks his partner to affirm that innocence to his attorney, but she never says that her report to the police was false. The most helpful call for Rosa is call number 25, recorded on November 4, 2014, after a hearing held before this Court on that same day. During that call, Rosa's partner spontaneously says that there was never any abuse. At that point, she becomes concerned about the legal ramifications to her if she recants her police report.

All in all, the calls reveal a dysfunctional relationship. That said, they seem to be on good terms, and she wants Rosa to be released and move with her to Orlando. But while she does not seem afraid of him, these facts do not imply that the domestic violence reported to the police did not occur. The evidence

| UNITED STATES v. ROSA-CAMACHO | Page 5 |
|---|---|

reveals that *both* Rosa and his partner had injuries, and he himself seems to have admitted to there being an altercation. Further, there is no evidence in the record of night club fight that was the supposed true cause of Rosa's partner's injuries. As such, I think the evidence points to there having been a fight, though I cannot say, without hearing from Rosa's partner, who was the aggressor. Furthermore, the calls, even when they offer some support for Rosa's positions, could just as easily be explained by an abusive relationship; that is, is she recanting because this is part of a cycle of abuse, or is she recanting because she was untruthful with the police. At this time, I cannot say, and I think more evidence is necessary before the facts can be sorted out. Nonetheless, there is plainly sufficient evidence from which to make a probable cause finding: the injuries, Rosa's statement to USPO de Santiago, and Rosa's partner's statements to the police. As such, I refer this matter to the presiding district judge for revocation proceedings.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 8th day of December, 2014.

              <u>S/ SILVIA CARREÑO-COLL</u>
              UNITED STATES MAGISTRATE JUDGE